**FREEDOM SAVINGS AND LOAN ASSO-CIATION, Plaintiff, Counterclaim/De-fendant, Appellant,**

v.

**Vernon WAY, Jr., d/b/a Freedom Real-ty, Defendant, Counterclaim/Plaintiff, Appellee.**

No. 84–3315.

United States Court of Appeals, Eleventh Circuit.

April 15, 1985.

---

John S. Hale, McLean, Va., for plaintiff, counterclaim/defendant, appellant.

Stevan T. Northcutt, Tampa, Fla., for defendant, counterclaim/plaintiff, appellee.

Before FAY and JOHNSON, Circuit Judges, and DYER, Senior Circuit Judge.

JOHNSON, Circuit Judge:

Freedom Savings and Loan Association brought this action against Vernon Way, sole proprietor of Freedom Realty Company, alleging that Way had infringed its servicemark under the Lanham Act, 15 U.S.C.A. § 1114 (1963), and had committed unfair labor practices under 15 U.S.C.A. § 1125 (1982) and "dilution" under FLA. STAT. § 495.151 (1972) by using the Freedom Realty name. Way counterclaimed for injunctive relief preventing Freedom Savings from infringing on his common law rights in the name Freedom Realty.

Freedom Savings first adopted its name in 1974 when it was a federally-chartered savings and loan association offering services throughout Florida and in other states. The company chose the name Freedom after reviewing names suggested by the public that were descriptive of the company's image and function; Freedom was chosen in consideration of the public's apparent appreciation of God and country. The name was placed on a red and white banner logo, similar to a flag. By the fall of 1976, Freedom Savings had registered several other servicemarks and trademarks, including "Freedom Federal" and "Freedom Account." Later, in 1979, FSL registered the single word "Freedom" when used in connection with savings and loan association services.

In November of 1976, Way opened his real estate office in the Tampa area and named it Freedom Realty Company. Although Way knew of Freedom Savings, he testified that he never thought the two entities would be confused and that he had chosen the name because of the bicentennial celebration. Freedom Savings knew of the existence of Freedom Realty and encouraged Way to refer potential mortgage borrowers to Freedom Savings.

Late in 1978, Way applied to the Patent and Trademark Office for registration of the name Freedom Realty Company and Freedom Savings filed its opposition to that registration. The Trademark Trial and Appeal Board (TTAB) decided the dispute in favor of Freedom Savings in 1981; Way did not appeal that decision. In the meantime, Freedom Savings had become a state-chartered institution which meant that it could, for the first time, offer real estate brokerage services to the public. Before that time it had purchased and sold property, but only as a proprietor rather than as a broker. Freedom Savings purchased Sun Bay Realty, which operated in the same market as Way's Freedom Realty, and the two companies cooperated on at least one sale.

After the TTAB decision, Way began to advertise his company as "Vernon Way's Freedom Realty, Independently Owned and Operated." Nevertheless, Freedom Savings sent him a letter in December of 1981 demanding that he cease using the Freedom Realty name. After unsuccessful attempts to settle the dispute, Freedom Savings filed this suit seeking monetary damages and declaratory and injunctive relief. Freedom Savings moved for summary judgment, alleging that the earlier proceeding before the TTAB had conclusively resolved the servicemark infringement claim in this suit; the court denied the motion. The case then proceeded to trial before a jury. The court granted Way's motion in limine at the beginning of the case, forbidding any reference to the earlier TTAB proceedings. At the close of the plaintiff's case, the jury was dismissed because Freedom Savings had not presented any evidence to allow a calculation of damages by the jury. The court served as trier of fact on the equitable claims that remained in the case and ruled in favor of Way on all of Freedom Savings' claims. The court also granted Way's counterclaim and enjoined Freedom Savings from using the name "Freedom Realty" in Hillsborough County, 583 F.Supp. 544.

## I. Infringement

The central inquiry in a servicemark infringement case is whether there is a "likelihood of confusion" on the part of consumers between the names and symbols used by the two parties.[1] The district court ruled that there was no likelihood of confusion in this case. The validity of that ruling will depend on the court's treatment of the prior decision by the TTAB and its assessment of the factors that courts in this Circuit most commonly rely upon to resolve the question of likelihood of confusion.

---

**1.** The parties no longer dispute the threshold question of whether the servicemark is distinctive enough to deserve protection under the Lanham Act. This case therefore presents no issue regarding the "secondary meaning" that may have attached to the servicemark.

### A. The TTAB decision

■ In many infringement cases the parties have had no occasion to pursue their claims before the TTAB. In cases involving trademark disputes ruled upon by the TTAB, however, the courts must give proper deference to the decision reached by the Board. Freedom Savings alleges that the court's failure to give adequate consideration to the TTAB decision infected its rulings on the motion for summary judgment, the admissibility of certain evidence and the burden of proof.

### Summary judgment

In *United States v. Utah Construction and Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), the court held that the factual findings of an administrative agency acting in a judicial capacity will in some circumstances be given res judicata or collateral estoppel effect in subsequent related lawsuits. Freedom Savings claimed in its motion for summary judgment that the TTAB decision in this case deserves such treatment. Since the TTAB found in favor of Freedom Savings on the likelihood of confusion issue, collateral estoppel would entitle Freedom Savings to summary judgment as a matter of law.

■ The *Utah Construction* court reached the result just described because Congress intended that a determination of facts by the Board of Contract Appeals acting in a judicial capacity would be final and conclusive for the parties. 384 U.S. at 419, 86 S.Ct. at 1558. Thus, while the preclusive effect of an administrative decision will depend in part on the adjudicative quality of the agency action and on traditional principles of collateral estoppel such as finality, *International Union of Operating Engineers, Local No. 714 v. Sullivan Transfer, Inc.*, 650 F.2d 669, 672–76 (5th Cir. Unit A 1981), Congress can also

limit the preclusive effect of an agency decision for the sake of some other public policy. *Cf. Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48–51 & n. 10, 94 S.Ct. 1011, 1019–1021 & n. 10, 39 L.Ed.2d 147 (1974).

■ This Circuit has decided that Congress limited the res judicata or collateral estoppel effect to be given the decisions of the TTAB because the Lanham Act provides for extensive judicial involvement in the registration and protection of trademarks. Section 1071(b) of Title 15 U.S.C.A. (1982) empowers courts to hear appeals from the TTAB *de novo*. According to *American Heritage Life Insurance Co. v. Heritage Life Insurance Co.*, 494 F.2d 3 (5th Cir.1974), the ability of courts to hear appeals on a *de novo* basis reflects a Congressional intent not to invoke the immunizing doctrines of res judicata or collateral estoppel with regard to TTAB proceedings. In this Circuit, a court hearing an infringement claim is not legally and conclusively bound by a prior decision of the TTAB regarding the same trademark dispute.[2] The trial court correctly denied the motion for summary judgment.

### Admissibility of evidence

The second alleged source of error arose from the district court's exclusion of all references to the TTAB proceedings "in the presence of the jury." Freedom Savings contends that the decision was reversible error because it removed from consideration some of the most important evidence in the case without any substantial justification. We do not address the propriety of that ruling, however, because the district court rescinded its earlier ruling once the jury had been dismissed at the end of the plaintiff's case. Explaining that the exclusion of the TTAB proceedings had been for

**2.** *But cf. Flavor Corp. of America v. Kemin Industries, Inc.*, 493 F.2d 275 (8th Cir.1974). The *Kemin* court held that where the Court of Customs and Patent Appeals (now the Court of Appeals for the Federal Circuit) has found a likelihood of confusion between two similar marks in a cancellation proceeding, that fact is precluded from relitigation in a subsequent infringement action between the same parties under the doctrine of collateral estoppel. Since that ruling was based on the Article III status of the CCPA, it arguably would not apply to decisions of the TTAB.

the benefit of the jury, the court stated that re-argument of the issue would not be necessary and that the material could come in.

Freedom Savings claims that despite this ruling, the court did not consider all the pertinent material. While acknowledging that the district court reviewed the findings of the TTAB before making its ruling, Freedom Savings maintains that its witnesses had limited their testimony to exclude all references to the TTAB proceedings, thereby weakening their testimony.[3] Freedom Savings contends, therefore, that the damage had already been done by the time the court made its second ruling.

■ Freedom Savings, however, never explains why it presented no evidence of the TTAB proceedings either during cross-examination or during rebuttal. Freedom Savings presented no rebuttal evidence at all, yet it could have presented considerable evidence at that stage, including supplemental testimony of previous witnesses, in order to compensate for the earlier exclusion. This complete failure to proffer evidence indicates that any error by the trial court in excluding evidence was harmless; the choices of counsel rather than the rulings of the court were responsible for the exclusion. *Cf. Mills v. Levy*, 537 F.2d 1331 (5th Cir.1976).

*Burden of proof*

The TTAB proceedings, while not dispositive of this case, were relevant evidence for the court to consider. In deciding whether to register Way's servicemark, the TTAB, like the district court in this infringement case, was faced with the question of whether the servicemarks of the two parties were likely to cause confusion among consumers. 15 U.S.C.A. § 1052(d) (1976); 15 U.S.C.A. § 1114(1) (1963). Freedom Savings claims that the ruling by the TTAB changed the applicable burden of proof in this case and that the trial court erred by using the preponderance of the evidence

standard in reaching its conclusion that there was no likelihood of confusion.

■ Fifth and Eleventh Circuit precedent establishes that the findings of the TTAB will control in a subsequent infringement suit unless the contrary is established by evidence that, in character and amount, carries "thorough conviction." *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 10 (5th Cir.1974); *Aloe Creme Laboratories, Inc. v. Texas Pharmacal Co.*, 335 F.2d 72, 74 (5th Cir.1964). This standard of proof arises out of respect for the expertise of the TTAB.

■ The district court did not mention this standard of proof in its final order, yet it is clear that the court used the proper standard in evaluating the TTAB findings. It discussed the relevant standard of proof at some length in its ruling on the summary judgment motion and the defendant raised the issue in its post-trial brief. Moreover, the court's final order contains the following discussion of the relevance of the TTAB decision:

> The TTAB came to the opposite conclusion on [the issue of likelihood of confusion].... The TTAB decision is "entitled to the most respectful consideration," but does not collaterally estop relitigation of this issue. *Carling Brewing Co., Inc. v. Phillip [Philip] Morris, Inc.*, 277 F.Supp. 326, 333 (N.D.Ga.1967). While the Court has considered the TTAB's decision, it is still unpersuaded that there is a likelihood of confusion, especially when measured by the seven criteria used in this Circuit.

The cited passage from *Carling Brewing* makes reference to *Aloe Creme Laboratories, Inc. v. Texas Pharmacal Co.*, 335 F.2d 72 (5th Cir.1964), one of the sources of the "thorough conviction" standard. Given the trial court's familiarity with the relevant precedents, its statement that the TTAB decision deserved the "most respectful consideration," and its silence on the question of burden of proof in other parts

---

**3.** We note, however, that the court's order excluded *references* to the TTAB proceedings but

left Freedom Savings free to present the same evidence that the TTAB had considered.

of the opinion, it is most reasonable to conclude that the court employed the proper standard of proof.

B. The seven factors

■ Decisions of this court have set forth seven factors to consider in deciding whether there is a likelihood of confusion between two servicemarks. The factors include the type of servicemark at issue, similarity of design, similarity of services, identity of purchasers and similarity of retail outlets, similarity of advertising campaigns, the defendant's intent, and actual confusion. *Safeway Stores, Inc. v. Safeway Discount Drugs*, 675 F.2d 1160, 1164 (11th Cir.1982); *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44 (5th Cir.1975); *Continental Motors Corp. v. Continental Aviation Corp.*, 375 F.2d 857 (5th Cir.1967). Although these factors are not literally embodied in the statute, they direct the court's attention to the most pertinent facts.

■ This Court reviews the trial court's assessment of these factors under the clearly erroneous standard. *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 840–41 (11th Cir.1983). In light of the modified standard of proof for infringement suits arising from disputes previously adjudicated in adversarial proceedings before the TTAB, the question is whether the district court was clearly erroneous in ruling that the evidence supporting its ruling carried thorough conviction.[4]

*Type of trademark*

■ The more distinctive a plaintiff's servicemark, the greater the likelihood that consumers will associate the registered mark and all similar marks with the registered owner. The law therefore provides the greatest protection to strong and distinctive servicemarks; the strength of a mark depends on the extent of third party usage and the relationship between the name and the service or good it describes.

■ If a name is used by third parties other than the infringer, then it is less strongly protected than it would otherwise be. *Sun Banks of Florida v. Sun Federal Savings and Loan Association*, 651 F.2d 311 (5th Cir.1981); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252 (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980). The court found that several businesses offering real estate and financial services in the Tampa area use the name Freedom. While Freedom Savings has resisted some such attempts to use the name and has filed several successful infringement suits in the past, other uses of the name within the knowledge of Freedom Savings have gone unchallenged. While this does not amount to extensive third-party usage, it does weigh slightly in favor of the defendant.

■ The primary indicator of trademark strength measures the logical correlation between a name and a product. If a seller of a product or service would naturally use a particular name, it is weakly protected. *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 841 n. 19 (11th Cir.1983). The relationships between names and products fall into several classifications, each one more heavily protected than the last: generic, descriptive, suggestive, arbitrary or fanciful, and coined.[5]

---

4. The existence of a registered servicemark belonging to Freedom Savings does not further modify the relevant standard of proof in the court below. While registration creates a rebuttable presumption of the validity of the registration and the holder's right to its exclusive use, 15 U.S.C.A. § 1057(b) (1963), that does not affect the ultimate burden of proof to be carried by the plaintiff in an infringement action. *Sun Banks of Florida v. Sun Federal Savings and Loan Association*, 651 F.2d 311 (5th Cir.1981).

5. Generic marks refer to a particular genus or class of which an individual service is but a member; such marks may never receive servicemark protection. Descriptive marks directly describe a characteristic or quality of the service, and can only be protected if they have acquired a "secondary meaning." 15 U.S.C.A. § 1052(f) (1976). "Vision Center," when used to describe a place to purchase eyeglasses, would be a descriptive name. *Vision Center v. Opticks, Inc.*, 596 F.2d 111 (5th Cir.1979), *cert. denied*, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646

Freedom Savings claims that the name "Freedom" is arbitrary and fanciful because it suggests patriotism rather than the provision of financial services. Yet it is equally plausible that a consumer would associate the idea of freedom with financial services. People seeking banking services desire security and financial freedom. Freedom Savings' method of choosing this name confirms the association, because "Freedom" was a name suggested through a public contest designed to provide a name appropriate for a savings and loan association. The district court noted these facts and categorized "Freedom" as a suggestive mark. We cannot conclude that the finding was clearly erroneous. Since the TTAB did not address this issue, the evidence relied on by the court carried thorough conviction.

### Similarity of mark

The district court found that Freedom Realty and Freedom Savings and Loan Association were not so similar that they suggested a connection between the two entities. The TTAB reached the opposite conclusion by noting that the most distinctive portions of the two names are identical while the differences (e.g., Realty) are merely generic terms that do not deserve great weight. The court recognized that Freedom was the most important part of the mark but also stated correctly that the use of an identical word, even a dominant word, does not automatically mean that two marks are similar. Freedom Realty never advertised with the word "Freedom" alone. Since in this case the primary word was weakly protected to begin with, minor alterations could effectively negate any confusing similarity between the two. *Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Association*, 651 F.2d 311, 316 (5th Cir.1981).

The court also looked to the dissimilar logos of Freedom Realty (a red, white and blue eagle and shield) and Freedom Savings (a red and white banner) and noted that Freedom Realty most often advertised by using its logo in connection with the name. The TTAB considered the logo of Freedom Realty in its decision, stating that an eagle design has a "natural affinity" to the idea of freedom. Yet this comparison between one design and a concept shared by both designs does not amount to a comparison of the total effects of both designs as required in this Circuit. *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252 (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980). The TTAB's failure to compare overall designs or to consider the relative weakness of the registered mark supports the district court's conclusion that evidence of thorough conviction established the lack of confusing similarity of the marks.

### Similarity of services

Freedom Savings never offered real estate brokerage services to the public until 1980, when it obtained a state charter and purchased Sun Bay Realty Company. Freedom Realty never offered financial services to its customers other than recommending financial institutions (including Freedom Savings) where they could obtain loans. Despite the fact that Freedom Sav-

---

(1980). Suggestive marks subtly connote something about the service so that a customer could use his or her imagination and determine the nature of the service. The term "Penguin" would be suggestive of refrigerators. *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184 (5th Cir.1980) *cert. denied*, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981); *See also John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 975 (11th Cir.1983) ("Memory Stub" is either suggestive or descriptive of device for recording bank check information); *Citibank, N.A. v. Citibanc Group, Inc.*, 724 F.2d 1540 (11th Cir.1984) ("Citibank" is suggestive of a modern or urban bank).

Two final categories receive the strongest legal protection. An arbitrary or fanciful mark is a word in common usage applied to a service unrelated to its meaning; "Sun Bank" is such an arbitrary or fanciful mark when applied to banking services. *Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Association*, 651 F.2d 311 (5th Cir.1981). Last, a coined name would be a word invented in order to identify the product or service, such as Kodak or Xerox. These categories have been characterized as "central tones in a spectrum." *Soweco, supra*, at 1183.

**1184**

ings performed appraisals and executed leases, it carried out these functions in a proprietary capacity, not as a broker for third parties. The district court correctly concluded that Freedom Savings and Freedom Realty did not offer the same products before 1980 and did not offer similar products under the name Freedom after 1980; from this it concluded that the services were not confusingly similar. This finding contradicted that of the TTAB, which considered the issue at some length and found that the services of the two firms were confusingly similar.

■ The doctrine of "expansion" accounts for the differences between the trial court and the TTAB on this issue. That doctrine states that the holder of a servicemark related to one set of services may prevent another from using that mark on another set of services if the two services are so related that the public may think the original owner has expanded its business into the new area. The doctrine prevents one person from capitalizing on and damaging the reputation of another person in a related field. *Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Association*, 651 F.2d 311 (5th Cir.1981); *American Foods, Inc. v. Golden Flake, Inc.*, 312 F.2d 619 (5th Cir.1963). In this case, if real estate and banking are services so similar that the public might believe that Freedom Savings had expanded its business to include real estate, then the fact militates in favor of a likelihood of confusion.

The trial court gave three reasons why expansion should not apply in this case. The first, the fact that Way used the Freedom name in connection with real estate sales before Freedom Savings did, is irrelevant. In every expansion case, some party other than the servicemark holder uses the name first in some new and related field. Another of the reasons, unreasonable delay on the part of Freedom Savings in asserting its rights, is also irrelevant at this stage of the inquiry.[6] Laches on the part

of the registered servicemark owner may provide a reason to ignore any confusion caused by the similarity between services such as banking and real estate, but the question at this point is the existence of confusing similarity, not its consequences.

The only remaining objection to this doctrine is the fact that real estate was not a natural area of expansion for Freedom Savings because federal law prohibited such an expansion. Freedom Savings did not obtain its state charter until 1980, well after Freedom Realty had begun operation. Yet there is no assurance that federal regulations would have influenced the public's perception of the services likely to be offered by Freedom Savings. Moreover, Freedom Savings' status as a state-chartered institution indicates that federal regulations do not seriously affect the present likelihood of confusion. Given the fluctuating nature of banking regulation and the fact that real estate sales and real estate finance are highly complementary services, the TTAB reached a reasonable result when it found a confusing similarity between the services that could be offered by the parties. The district court clearly erred when it found that the opposite position was supported by evidence carrying thorough conviction.

*Identity of customers and facilities*

■ Dissimilarities between the retail outlets for the parties' services reduce the possibility of confusion. *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 262 (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980). It is undisputed that the facilities used by Freedom Savings and Freedom Realty are quite different, for Way operates his business out of a residential building and Freedom Savings uses modern commercial banking buildings.

■ The identity of customers may also affect the likelihood of confusion, and that presents more of an issue in this case.[7] On

6. See footnote 8, infra.

7. The district court found that there was evidence of only a few customers seeking the services of both Freedom Realty and Freedom Sav-

the one hand, the nature of the services offered by the two companies here suggests that a sizeable group of customers would be interested in both types of service. A consumer who uses both services is more susceptible to confusion than a consumer who uses only one of the two. On the other hand, since most of these customers are making a major investment, they are likely to be especially well-informed buyers. The sophistication of a buyer certainly bears on the possibility that he or she will become confused by similar marks. *Sun-Fun Products, Inc. v. Suntan Research & Development, Inc.*, 656 F.2d 186, 189 (5th Cir. Unit B 1981). We therefore conclude that the trial court did not clearly err in finding that the identity of the customers did not contribute. to the likelihood of confusion. Since the TTAB never considered this point, the evidence carries thorough conviction.

### Similarity of advertising

Freedom Savings spends much more on advertising than Freedom Realty. It advertises on television and radio and in high-circulation newspapers. Freedom Realty, by contrast, advertises infrequently on radio and more often in newsletters, "shopper" papers and low-circulation newspapers. The district court was not clearly erroneous in finding that the overall advertising campaigns of the two entities were quite different. The TTAB made no comparison of advertising campaigns.

### Intent of defendant

██ If a person intends to induce confusion among customers, he or she is likely to succeed. A finding of malicious intent on the part of the defendant will therefore incline a court to find a likelihood of confusion. In this case, Way continued to use the name Freedom Realty even after losing his case before the TTAB. But that does not, as Freedom Savings contends, establish bad faith per se, because Way modified the name after the TTAB decision in an

effort to distinguish his business from Freedom Savings. He used the name "Vernon Way's Freedom Realty, Independently Owned and Operated." The trial court reasonably interpreted this as evidence of good faith and the TTAB had no opportunity to make any findings on the issue.

### Actual confusion

██ Actual confusion by a few customers is the best evidence of likelihood of confusion by many customers. *Amstar Corp v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980). Freedom Savings presented testimony regarding two alleged incidents of confusion between itself and Freedom Realty. The first was the testimony of Freedom Savings' president that some of his friends had asked if Freedom Realty belonged to Freedom Savings. The court discounted this testimony because none of the friends were identified as potential customers and none of them testified at trial.

The second alleged incident was related by a representative of Freedom Savings, Rudy Canady, who testified in deposition that during a visit to Way's office Way had mentioned a potential customer who had thought that Freedom Savings and Freedom Realty were related. Way denied that the incident took place and the court accepted his contention, noting that Way was a credible witness and that Canady had a personal dislike for Way. Freedom Savings does not give any reason to find these factual findings based on witness credibility to be clearly erroneous. Hence, even though a plaintiff usually will not have to prove more than a few incidents of actual confusion, *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482 (5th Cir.1971), in this case there was no reliable proof of actual confusion at all. The district court did not clearly err and

---

ings. It would overburden a plaintiff to ask that he or she prove through direct evidence that a large number of customers actually use

the services of both parties: hence, it should be enough to show that the same customers are likely to use both services.

the TTAB made no findings as to actual confusion.

*Conclusion*

 With the exception of the similarity of services, the district court did not clearly err in holding for the plaintiff on each of the issues, even under the thorough conviction standard. The type of mark and the evidence of actual confusion, both of which favor the defendant in this case, are the most important of the factors in this Circuit, *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966 (11th Cir.1983); *Sun Banks of Florida, Inc. v. Sun Federal Savings and Loan Association*, 651 F.2d 311 (5th Cir.1981). The TTAB made no findings on these issues. In light of the district court's correct findings on those critical factors as well as a majority of the other factors, we hold that the ultimate finding in favor of Way was not clearly erroneous. Since there was no likelihood of customer confusion between Freedom Savings and Freedom Realty, the plaintiff has failed to establish its claim of infringement.[8]

## II. Unfair Competition

In addition to the infringement claim, Freedom Savings brought an unfair competition claim under 15 U.S.C.A. § 1125 (1982). An unfair competition claim, like infringement, calls on the plaintiff to show confusing similarity between services. Thus, many of the same facts working against Freedom Savings on the infringement claim also work against it on this claim. The district court held that Freedom Savings had not shown a "substantial similarity" between services and therefore had failed to prove its claim.

 Failure on the infringement claim would not automatically bar an unfair competition claim. As the court noted in *Sun-Fun Products v. Suntan Research & Development*, 656 F.2d 186, 192 (5th Cir. Unit B 1981), the unfair competition claim is a "broader" one that requires the court to examine conduct by the defendant that would not be dispositive of an infringement claim. One example would be the use of packaging or "trade dress" that is not protected by a registered trademark but that nevertheless causes confusion between products.

 Freedom Savings, however, does not complain of any conduct by Way not considered already in the infringement claim. Because Freedom Savings offers nothing new to include in the broadened unfair competition inquiry, we will affirm the district court's holding on this issue.

## III. Dilution

A Florida statute, Section 495.151, expands the protections of trademark law by preventing persons from "diluting" the distinctiveness and value of a trademark by using it on products and services completely different from the original product or service. Dilution, like unfair competition, is a broader claim than infringement. Freedom Savings claims that the use of the Freedom name, even if it was not infringement, constituted dilution.

 Dilution requires some proof that the use of a trademark decreases its commercial value. If the plaintiff holds a distinctive trademark, it is enough that the defendant has made significant use of a very similar mark. *See Community Federal Savings & Loan Assoc. v. Orondorff*, 678 F.2d 1034, 1035 (11th Cir.1982). On the other hand, where the mark is a weak one that lacks much distinctiveness, the mere use of a similar mark will not establish loss of commercial value. *See Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252 (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980). Freedom Savings has presented no evidence of diminished commercial value in this case apart from the fact that Freedom Realty has used a

---

**8.** The trial court found that, even if Freedom Savings had established a likelihood of confusion, it could not hold Way liable for infringement because of laches. Five years passed between Way's first use of the Freedom name and the filing of this lawsuit. Because of our ruling on the likelihood of confusion, we need not reach this issue.

similar name. Since "Freedom" has been determined to be a weak trademark in this case, the district court was not clearly erroneous to find that Freedom Savings has failed to prove that Way's use of the Freedom name decreased its value in the area of financial services.

IV. Remedy

■ The district court issued an injunction in this case preventing Freedom Savings from using the name Freedom Realty Company in Hillsborough County, where Way had established his common law rights to the name. Freedom Savings claims that this remedy was improper because it interferes with rights granted to it under federal trademark law. The remedy, so the argument goes, is preempted by federal law regardless of the merits of Freedom Savings' other claims.

The argument, however, does not explain how the remedy ordered by the court conflicts with federal trademark rights once it is settled that Way's use of the name Freedom Realty was not an infringement under the Lanham Act. If Freedom Savings had no right to stop Way from using Freedom Realty as the name of his real estate brokerage firm in Hillsborough County, then there is no federal right implicated by the court's order. The order by the court simply protected Way's common law rights and was proper in light of the court's disposition of Freedom Savings' other claims.

V. Conclusion

The plaintiff has not demonstrated a likelihood of confusion between the two servicemarks and therefore has failed to establish infringement. Neither has it demonstrated any further illegal conduct by the defendant that would establish dilution or unfair competition in the absence of likelihood of confusion regarding the servicemarks. Finally, it has not pointed to any error in the remedy ordered by the district court. The judgment of the district court is AFFIRMED.