**CNA FINANCIAL CORPORATION,
Plaintiff,**

v.

**Larry D. BROWN and CNA Insurance
Companies, Inc., Defendants.**

No. 94–1058–CIV–T–17A.

United States District Court,
M.D. Florida,
Tampa Division.

April 5, 1996.

Douglas Scott Gregory, Gregory & Spurgin, P.A., Tampa, FL, for CNA Financial Corporation.

Larry D. Brown, Clearwater, FL, pro se.

William C. Lane, Masselli & Lane, Arlington, VA, for Larry D. Brown.

Richard Alton Zeller, Richard A. Zeller, P.A., Clearwater, FL, Brent Allan Rose, Scott T. Orsini, Orsini & Rose, Clearwater, FL, for CNA Ins. Corp.

## MEMORANDUM OPINION

KOVACHEVICH, Chief Judge.

This cause was tried from November 27, 1995, through November 29, 1995, before this Court sitting without a jury. The Court has heard and considered the testimony of the witnesses and reviewed the exhibits and the arguments of counsel. In accordance with Fed.R.Civ.P. 52(a), this Court now renders the following Findings of Fact and Conclusions of Law. To the extent that any of the Findings of Fact actually constitutes a Conclusion of Law, it is adopted as such. The converse also applies to the extent that any Conclusion of Law actually constitutes a Finding of Fact.

## FINDINGS OF FACT

1. Plaintiff, CNA FINANCIAL CORPORATION (hereinafter CNAF), is a Delaware corporation which is headquartered in Chicago, Illinois.

2. CNAF is the parent holding corporation and owns 100% of Continental Casualty Company (hereinafter Continental), which in turn owns 100% of various insurance companies. These companies (hereinafter the CNAF family, which includes Continental) include the following: (1) American Casualty Company of Reading, Pennsylvania; (2) CNA Assurance Company of Connecticut; (3) CNA Casualty of California; (4) CNA International Reinsurance Company, Ltd.; (5) CNA Lloyd's of Texas; (6) Columbia Casualty Company; (7) Continental Assurance Company; (8) National Fire Insurance Company of Hartford; (9) Transcontinental Insurance Company; (10) Transportation Insurance Company; (11) Valley Forge Insurance Company; and (12) Valley Forge Life Insurance Company. No member of the CNAF family is a party to this cause.

3. The CNAF family underwrites and provides insurance services in all fifty (50) States and Puerto Rico. Each member of the CNAF family is appropriately licensed by the State(s) in which it conducts business. CNAF, on the other hand, is not licensed by any State and does not engage in any form of insurance activity other than being a holding company. CNAF has never been subjected to any type of action by any State for illegally doing business.

4. Defendant, LARRY D. BROWN (hereinafter Brown), is an individual residing in Pinellas County, Florida.

5. Defendant, CNA INSURANCE COMPANIES, INC. (hereinafter Brown's company), is a Delaware Corporation founded by Brown.

6. On January 11, 1966, Continental registered a service mark, "CNA," with the United States Patent and Trademark Office (Reg. No. 802,010). The mark was listed on the Principal Register under Class 102 and registered for use in underwriting accident, health, liability, property, marine, and multiple peril insurance and providing reinsurance and bonds. The "CNA" service mark was first used in commerce on December 21, 1964, and appears as three capital letters with no periods or spaces between them.[1]

1. Under the registration, the "CNA" service mark does not appear with quotation marks

7. On March 23, 1973, Continental sold its "CNA" service mark to CNAF for valuable consideration as a result of CNAF becoming Continental's parent. Accordingly, Continental executed a written assignment of the "CNA" service mark to CNAF. The document also purports to assign all the goodwill connected with the mark. After the assignment, Continental continued to perform the same insurance services and continued to use the "CNA" service mark. Both before and after the assignment, CNAF was merely a parent holding company and never engaged in any insurance activity.

8. On July 13, 1976, CNAF registered a different service mark, "CNA," with the United States Patent and Trademark Office (Reg. No. 1,043,744). The mark was listed on the Principal Register under Class 36 and registered for use in insurance underwriting services. The "CNA" service mark was first used in commerce on December 21, 1964, and appears as three bold-faced, block-italicized, capital letters with no periods between them. *See* Exhibit A attached.

9. On October 26, 1976, CNAF registered a third service mark, "INSURANCE FROM CNA," with the United States Patent and Trademark Office (Reg. No. 1,051,458). Like the "CNA" service mark, the "INSURANCE FROM CNA" service mark was listed on the Principal Register under Class 36 and registered for use in insurance underwriting services. This mark was first used in commerce on July 21, 1975, and looks like the "CNA" mark, except that the words "INSURANCE FROM" appear in smaller, capital letters above "CNA." *See* Exhibit B attached.

10. All three (3) service marks are arbitrary, or inherently distinctive, as applied to insurance. There is no relationship between the letters "CNA" and the service it promotes, insurance. Clearly, these service marks are not suggestive, descriptive, or generic of insurance.

11. On November 3, 1981, CNAF filed two (2) affidavits with the Commissioner of Patents and Trademarks. Each affidavit respectively attests that its "CNA" and "INSURANCE FROM CNA" service marks

have been in continuous use since their registration and otherwise tracks the language of 15 U.S.C. § 1065 (1994). Accordingly, CNAF's right to exclusively use the marks in commerce is "incontestable" under the Lanham Act, 15 U.S.C. § 1065, subject to the defenses listed in 15 U.S.C. § 1115(b).

12. On December 10, 1985, the Commissioner of Patents and Trademarks renewed the "CNA" service mark (Reg. No. 802,010) until January 11, 2006, to "CNA Financial Corporation dba CNA of Chicago, Illinois."

13. CNAF engages in extensive national and local advertising with its three (3) service marks solely on behalf and for the benefit of its family. CNAF's advertising budget roughly averages six (6) million dollars annually.

14. CNAF owns and controls the use of the three (3) service marks. The CNAF family uses the marks by way of licenses issued by CNAF. Although CNAF controls the use of its service marks, it does not control the nature and quality of the insurance services that the CNAF family offers in connection with the service marks. Control over the insurance services rests with each State-licensed member of the CNAF family.

15. CNAF uses two (2) trade names, "CNA" and "CNA Insurance Companies." Although "CNA" is a federally registered service mark, neither "CNA" nor "CNA Insurance Companies" are registered anywhere as trade names. The later trade name is used by CNAF to refer only to the CNAF family, not itself.

16. On February 2, 1994, Brown had his company, CNA Insurance Companies, Inc., incorporated in Delaware. *See supra* ¶ 5. The next day, Brown registered "CNA Insurance Company" as his company's trade name in New Castle County, Delaware. Brown also incorporated two (2) other corporations in Delaware, one of which is "CNA Insurance Group, Inc." Mr. Brown testified that he could not remember the name of the other Delaware corporation. Neither of these later two (2) companies are parties to this cause.

around it. In this Order, the Court is merely     using quotation marks for stylistic purposes.

17. Before incorporating his company, Brown called various insurance departments around the country, including Florida's, and discovered that none of them had registered any entity called CNA Insurance Company, CNA Insurance Companies, CNA, or CNA Financial Corporation.

18. Shortly after incorporating his company, Brown searched the records of the United States Patent and Trademark Office. In the process, Brown discovered that CNAF owned the three (3) service marks at issue in this case. Brown also searched for the trade name "CNA Insurance Companies," but did not find any such federal registration.

19. Brown incorporated his company under the name CNA Insurance, Inc., based upon "CNA"'s name recognition among consumers. At the time he formed his company, Brown believed that the term "CNA" had returned to the public domain based on his state and federal inquiries and, therefore, he had the right to use it. Although Brown's company has not set any corporate objectives regarding the nature of its business, Brown believed that using the CNA name was a very good business decision.

20. As of the date of trial, Brown's company is completely inactive. It conducts no business, no advertising, no services, has no directors or officers, and has not issued any stock.

21. On several occasions, various plaintiffs have mistakenly served process on C.T. Corporation, the registered agent for service of process for Brown's company. In each of those cases, Brown's company has been released from liability based on judicial findings that CNAF or a family member was the intended defendant.

22. On February 21, 1994, Brown's attorney, Bruce R. Young, sent a letter to Continental's lawyer, Gerald Spurgin. In that letter, Young stated that his client, Brown, owned the name "CNA Insurance Company" and that Continental should immediately cease any use of it or the name "CNA Insurance Companies." Young was acting within the scope of his actual authority when writing the letter.

23. Brown has not made any specific offers to sell the use of the terms "CNA," "CNA Insurance Company," or "CNA Insurance Companies" to any third parties. However, Brown is aware of third parties willing to pay three (3) to thirty (30) million dollars for the right to use such terms.

## CONCLUSIONS OF LAW

CNAF seeks to enjoin Brown and his company from using any form of the consecutive letters "CNA." CNAF asserts that they have violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1994) (service mark infringement); that they have infringed on CNAF's trade name in violation of the Lanham Act; and that they have engaged in unfair competition contrary to the Lanham Act and the common law. Brown and his company deny such claims, and raise several affirmative defenses. At trial, the Court granted CNAF's motion to conform the pleadings to the evidence. Therefore, the claims and defenses that the parties argued in their written closing arguments are deemed to be in the pleadings if they are supported by the evidence at trial.

1. This Court has jurisdiction over the Lanham Act claims pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1338, and 28 U.S.C. § 1331. The Court has jurisdiction over the common law claim pursuant to 28 U.S.C. § 1338(b) and the doctrine of pendent jurisdiction.

*Service Mark Infringement*

2. To prove a *prima facie* case of service mark infringement, CNAF must prove: (1) that Brown and his company used a term in commerce (2) in connection with their services (3) which is likely to be confused with the service marks (4) in which CNAF possesses the right to use to designate its services. 15 U.S.C. § 1125(a) (1994); *Investacorp, Inc., v. Arabian Investment Banking Corp.,* 931 F.2d 1519, 1521–22 (11th Cir.), *cert. denied,* 502 U.S. 1005, 112 S.Ct. 639, 116 L.Ed.2d 657 (1991).

3. CNAF proved the first element, that Brown and his company used a term in commerce. The Lanham Act defines "commerce" broadly to include "all commerce

which may lawfully be regulated by Congress." 15 U.S.C. § 1127. Under the Constitution, Congress may regulate anything that rationally affects interstate commerce. *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). In infringement cases, wholly intrastate activities have easily be deemed to affect interstate commerce. *E.g., World Carpets, Inc., v. Dick Littrell's New World Carpets*, 438 F.2d 482, 488–89 (5th Cir.1971). At a minimum, Brown and his company's use of "CNA"-like terms rationally affected interstate commerce. First, Brown used the term "CNA" in commerce when incorporating his company under the name CNA Insurance Companies, Inc. *See supra* Findings of Fact, ¶ 16. Brown further employed that term when registering his trade name. *Id.* Finally, Brown used a "CNA" term in commerce when his attorney mailed a letter to Continental's attorney, which declared Brown's exclusive right to the term and demanded that Continental cease using it. *See supra* Findings of Fact, ¶ 22.

■ 4. CNAF failed to prove the second element, that Brown and his company used a term in connection with their services. Based upon the Court's Findings of Fact, neither Brown nor his company have ever offered any services. *See supra* Findings of Fact, ¶¶ 19–20. In fact, Brown's undisputed testimony at trial reveals that his company has not even decided what its business will be. Although Brown employed the word "insurance" in his company's official and trade names, those titles alone do not support an inference that Brown used a term in connection with any services, insurance or otherwise.

■ 5. Notwithstanding the second element, CNAF proved the third element, likelihood of confusion. In determining whether a defendant's use of a term creates a likelihood of confusion, courts look at seven (7) factors: (1) the type of service mark used; (2) the similarity of the service mark; (3) the similarity of service; (4) the similarity of purchasers; (5) the similarity of advertising media used; (6) the existence of actual confusion; and (7) the defendant's intent. *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1514 (11th Cir.1984); *American United Life In-*

*surance Co. v. American United Insurance Co.*, 731 F.Supp. 480, 485 (S.D.Fla.1990). In the Eleventh Circuit, "the type of mark and evidence of actual confusion are the most important factors." *Dieter v. B & H Industries of Southwest Florida, Inc.*, 880 F.2d 322, 326 (11th Cir.1989), *cert. denied*, 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 332 (1990).

■ In the present case, CNAF has not only proven "the most important factors," but also factors two (2) and seven (7). First, CNAF's arbitrary service marks are the most distinctive type of marks under the Lanham Act and, thus, are entitled to the "greatest protection." *Freedom Savings & Loan Association v. Way*, 757 F.2d 1176, 1182 (11th Cir.), *cert. denied*, 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985); *see supra* Findings of Fact, ¶ 10. Second, the use of "CNA" in Brown's company's corporate and trade name is substantially similar to CNAF's service marks. Both the company's names and CNAF's service marks centrally feature the term "CNA." Thirdly, CNAF presented evidence that several consumers were actually confused when they incorrectly served Brown's company with lawsuits intended for CNAF. *See supra* Findings of Fact, ¶ 21. Finally, by his own admission at trial, Brown believes that his use of "CNA" is a good business decision in light of "CNA"'s name recognition. *See supra* Findings of Fact, ¶ 19. Indeed, "[e]vidence that a defendant intended to come as close to plaintiff's mark as the law would allow may support an inference that a defendant intended to trade on the good will associated with plaintiff's mark." *Ice Cold Auto Air of Clearwater, Inc., v. Cold Air & Accessories, Inc.*, 828 F.Supp. 925, 937 (M.D.Fla. 1993) (citing *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 977–78 (11th Cir. 1983)). Therefore, in light of the above evidence, insurance consumers would likely confuse Brown's company for the CNAF family.

■ 6. CNAF failed to prove the fourth element, that it possessed the right to use the service marks. Although CNAF established that its rights to two (2) of the

service marks are "incontestable,"[2] Brown and his company assert that CNAF abandoned such rights by its "naked," or uncontrolled, licensing to the CNAF family. Under the Lanham Act, "[n]aked (or uncontrolled) licensing of a mark occurs when a licensor allows a licensee to use the mark on any quality or type of good [or service] the licensee chooses." *Stanfield v. Osborne Industries, Inc.*, 52 F.3d 867, 871 (10th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 314, 133 L.Ed.2d 217 (1995). Indeed, when a service mark owner engages in naked licensing, without any control over the quality of the services rendered by the licensee, such a practice is inherently deceptive and constitutes abandonment of any rights to the service mark by the licensor. *Id.* In the present case, CNAF does not use its service marks in connection with any insurance services because it is a mere parent holding company. *See supra* Findings of Fact, ¶ 3. In fact, CNAF registered its service marks specifically for insurance activities. *See supra* Findings of Fact, ¶¶ 6, 8, 9. Thus, because CNAF cannot lawfully engage in any insurance activity without a State license,[3] CNAF licenses its family to use the service marks. *See supra* Findings of Fact, ¶ 14.

▮ In order for its family's use of the service marks to be deemed use by CNAF, CNAF must control not only the use of its marks, but also the "nature and quality of the ... services" associated with the marks. 15 U.S.C. § 1055; *Stanfield,* 52 F.3d at 871; *National Trailways Bus System v. Trailway Van Lines, Inc.,* 269 F.Supp. 352, 356–57 (E.D.N.Y.1965). Based on the above Findings of Fact, CNAF does not control the nature and quality of its licensee's insurance services. *See supra* Findings of Fact, ¶ 14. Accordingly, CNAF lacks the requisite control over the services connected with its marks and, therefore, forfeits its rights in the mark. *See Stanfield,* 52 F.3d at 871.

▮ 7. Brown and his company correctly point out that "an owner of a ...

**2.** *See supra* Findings of Fact, ¶ 10.

**3.** *See, e.g.,* Fla.Stat. § 626.901, *et seq.* (1995) (prohibiting direct and indirect insurance activity

service mark may not assign the rights to that mark 'in gross,' i.e. divorced from the appurtenant good will that the mark engenders." *Dial–A–Mattress Operating Corp. v. Mattress Madness, Inc.,* 841 F.Supp. 1339, 1350 (E.D.N.Y.1994) (citing 15 U.S.C. § 1060). The mere fact that an assignment contract states that good will is assigned along with a mark does not necessarily mean that it actually was assigned. *Money Store v. Harriscorp Finance, Inc.,* 689 F.2d 666, 676 (7th Cir.1982). In the present case, Continental assigned its rights in the "CNA" service mark to CNAF and also purported to assign the mark's good will. *See supra* Findings of Fact, ¶ 7. Indeed, Continental may not have validly assigned any good will to CNAF because each company engages in different activities. *See Money Store,* 689 F.2d at 674–78 (finding a valid service mark assignment because the assignee engaged in similar services and used the mark to attract the same type of business). However, even if that assignment was "in gross," CNAF re-registered that service mark under its own name. *See supra* Findings of Fact, ¶ 12. Thus, the Court rejects Brown's argument that CNAF does not possess the right to use the transferred service mark based on being a mere assignee in gross.

8. Because CNAF has failed to prove two (2) of the four (4) elements, it is not entitled to an injunction based on service mark infringement, 15 U.S.C. § 1125(a).

*Trade Name Infringement*

9. A *prima facie* case of trade name infringement is essentially the same as one for service mark infringement. *See Lang v. Retirement Living Publishing Co.,* 949 F.2d 576, 580 (2d Cir.1991). Both causes of action arise under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

10. Just as CNAF failed to prove a *prima facie* case of service mark infringement, it also failed to prove a *prima facie* case of trade name infringement.

by anyone not authorized by the State of Florida).

11. Specifically, for the same reasons as with service mark infringement, CNAF failed to prove that Brown and his company commercially used any name in connection with services. *See supra* Conclusions of Law, ¶ 4. Neither Brown nor his company engage in or sells any service, insurance or otherwise. *Id.*

12. Therefore, CNAF is not entitled to an injunction based on trade name infringement, 15 U.S.C. § 1125(a).

*Statutory Unfair Competition*

▆ 13. In addition to providing infringement causes of action, the Lanham Act also establishes a cause of action for unfair competition. *Freedom Savings & Loan Association v. Way,* 757 F.2d 1176, 1186 (11th Cir.), *cert. denied,* 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985). Like infringement, unfair competition arises under 15 U.S.C. § 1125. To prove a *prima facie* case of statutory unfair competition, CNAF must establish: "(1) that it is the prior owner of the trade name or service mark, and (2) that [Brown or his company] adopted a trade name or service mark so that there exists a likelihood of confusion to consumers as to the proper origin of the . . . services, such that a consumer is likely to believe that defendant's . . . services are being sold with the consent or authorization of [CNAF], or that [Brown or his company] is affiliated with or connected to [CNAF]." *American United Life Insurance Company v. American United Insurance Company,* 731 F.Supp. 480, 485 (S.D.Fla.1990).

▆ 14. CNAF correctly points out that statutory unfair competition is a "broader" claim than infringement. *Freedom Savings,* 757 F.2d at 1186. However, CNAF must explain why Brown's or his company's activities constitute unfair competition notwithstanding the Court's decision regarding infringement. *Id.* (affirming a district court's denial of a plaintiff's statutory unfair competition claim "because [the plaintiff] offer[ed] nothing new to include in the broadened unfair competition inquiry"). Neither through trial testimony or closing argument has CNAF sufficiently convinced the Court that Brown or his company unfairly competed.

15. Furthermore, CNAF has failed to establish that either Brown or his company engage in services. *See supra* Findings of Fact, ¶ 20; Conclusions of Law, ¶¶ 4, 11. Even if CNAF were able to show how unfair competition is broader than infringement, CNAF's claim fails because it did not prove the essential element of "services."

16. Thus, CNAF is not entitled to an injunction based on statutory unfair competition, 15 U.S.C. § 1125.

*Common Law Unfair Competition*

▆ 17. Under Florida common law, CNAF proves a *prima facie* case of unfair competition by establishing: "(1) that [CNAF] is the prior user of the trade name or service mark; (2) that the trade name or service mark is arbitrary or suggestive or has acquired secondary meaning; (3) that [Brown or his company] is using a 'confusingly similar trade name or service mark to indicate or identify similar services rendered . . . by it in competition with [CNAF] in the same trade area in which [CNAF] has already established its trade name' or service mark; and (4) that as a result of [Brown's or his company's] action or threatened action, consumer confusion as to the source or sponsorship of [Brown's or his company's] . . . services is likely." *American United,* 731 F.Supp. at 486 (quoting *American Bank of Merritt Island v. First American Bank & Trust,* 455 So.2d 443, 445–46 (Fla. 5th DCA 1984), *rev. denied,* 461 So.2d 114 (Fla.1984)).

18. The Florida Supreme Court has interpreted the "competition" element to require a showing of "similarity in businesses of the parties." *Sun Coast v. Shupe,* 52 So.2d 805 (Fla.1951).

▆ 19. In the present case, CNAF has failed to prove "competition." Neither CNAF nor Brown's company engages in any type of service. *See supra* Findings of Fact, ¶¶ 3, 20. CNAF is a mere holding company. Brown's company is completely inactive and has not even established a corporate objective. Therefore, there can be no "competition" between the parties if neither sells anything.

20. CNAF is not entitled to an injunction based on common law unfair competition.

*Affirmative Defense of Unclean Hands*

21.. Because CNAF has failed to prove its claims for service mark infringement, trade name infringement, and statutory and common law unfair competition, Brown's and his company's affirmative defenses are moot.

22. Notwithstanding CNAF's failed claims, Brown and his company have failed to convince the Court that CNAF has "unclean hands." Although Brown and his company cite several Delaware and Florida statutes for the notion that CNA is unlawfully using its purported trade names, they have not pointed out how the evidence supports such a finding. In fact, the trial testimony supports only an inference of lawful conduct by CNAF. *See supra* Findings of Fact, ¶ 3.

*Other Pending Matters*

23. At trial, the Court reserved ruling on certain motions and objections. After CNAF rested its case, Brown and his company moved for a direct verdict. While pointing out that this motion should have been one for judgment as a matter of law under Fed. R.Civ.P. 50(a)(1), the Court **denies** the defendants' motion as moot. During Brown's case-in-chief, CNAF objected to two (2) witnesses, Marvin Evans and James Ward, on the grounds that Brown failed to disclose them pursuant to the rules of discovery. The Court hereby **overrules** those objections as moot because it did not rely on the testimony of either witness in its ruling. At the close of all the evidence, Brown and his company renewed their motion for directed verdict. Again, the Court **denies** that motion as moot and points out that the motion should have been one for judgment as a matter of law under Fed.R.Civ.P. 50(b). Fi-nally, CNAF moved for a judgment of injunction after Brown and his company rested. The Court **denies** that motion for the same reasons as those stated herein. Any other motions or objections not raised by the parties in their closing arguments are hereby **denied** or **overruled.**

24. Brown's, and his company's, cursory request for formal cancellation of the three (3) service marks pursuant to 15 U.S.C. § 1119 is **denied.**

25. Any other claims or defenses that the Court has not ruled on herein are **rejected** as being without merit.

Overall, while the Court sympathizes with CNAF's time, money, and effort involved with establishing consumer loyalty to the "CNA" marks and trade names, it cannot, in equity, grant an injunction against parties that have not performed any services. However, nothing this Court does in this ruling should be construed as preventing non-parties, such as Continental or other members of the CNAF family, from asserting superior rights in the "CNA" marks and/or trade names. Unfortunately for CNAF, the law does not require Brown to choose unique and creative names for his dormant company. The Court would caution Brown and his company, though, to think very hard about what type of business, if any, to pursue under the "CNA" name. Accordingly, it is

**ORDERED** that Plaintiff's claims for injunctive relief be **denied;** and the Clerk of the Court shall **enter** final judgment in favor of Defendants.

**DONE AND ORDERED.**