**CNA FINANCIAL CORPORATION,**
**Plaintiff,**

v.

**Larry D. BROWN and CNA Insurance Companies, Inc., Defendants.**

No. 94–1058–CIV–T–17A.

United States District Court,
M.D. Florida,
Tampa Division.

July 9, 1996.

Douglas Scott Gregory, Gregory & Spurgin, P.A., Tampa, FL, for CNA Financial Corporation.

Larry D. Brown, pro se.

William C. Lane, Maggelli & Lane, Arlington, VA, for Larry D. Brown.

Richard Alton Zeller, Richard A. Zeller, P.A., Clearwater, FL, Brent Allan Rose, Scott T. Orsini, Orsini & Rose, Clearwater, FL, for CNA Insurance Co.

*ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION, ETC., AND GRANTING DEFENDANT'S MOTION FOR RULE 11 SANCTIONS*

KOVACHEVICH, Chief Judge.

This cause comes before the Court on the following motions, responses, and documents:

1. Plaintiff CNA FINANCIAL CORPORATION's (hereinafter CNAF) Motion to Amend Judgment or, in the Alternative, to Open the Judgment and Take Additional Testimony, or, in the Alternative, for a New Trial (Docket No. 98);

2. Defendant LARRY D. BROWN's (hereinafter Brown) Memorandum in Opposition to Plaintiff's Motion to Amend Judgment or, in the Alternative, to Open Judgment and Take Additional Testimony or for a New Trial (Docket No. 100);

3. Brown's Motion to Impose Rule 11 Sanctions on Attorney Douglas S. Gregory (Docket No. 101);

4. CNAF's Response to Rule 11 Motion (Docket No. 106);

5. CNAF's Reply to Brown's Response to Motion to Amend Judgment, Etc. (Docket No. 107); and

6. Brown's Motion for Leave of Court to File a Supplemental Memorandum (Docket No. 108).

On July 1, 1994, CNAF filed a complaint and sought injunctive relief against Brown and his new company, CNA Insurance Companies, Inc., alleging federal service mark and trade name infringement, and statutory and common law unfair competition. By its Memorandum Opinion filed April 5, 1996, the Court denied all of CNAF's claims for injunctive relief and entered final judgment in favor of Brown and his company. *CNA Financial Corp. v. Brown,* 922 F.Supp. 567 (M.D.Fla.1996).

## CNAF'S MOTION FOR RECONSIDERATION, ETC.

In one of the motions before the Court, CNAF seeks a reconsideration, to reopen its case, or a new trial. CNAF argues that the Court erred in six (6) instances: (1) by ignoring Sections 32 and 34(a) of the Lanham Act (15 U.S.C. §§ 1114, 1116(a) (1994)); (2) by concluding that CNAF failed to prove that Brown was using its service marks in connection with services; (3) by summarily and erroneously finding that CNAF lacked control over the nature and quality of the services connected with the marks and failing to require Brown to carry his burden of proof;

(4) by requiring CNAF to offer additional evidence of statutory unfair competition; (5) by holding that CNAF failed to prove "competition" under its claim for common law unfair competition; and (6) by denying CNAF's trade name infringement claim (Docket No. 98). The Court rejects all of these grounds for the reasons stated herein.

## I. The Standard for Rehearing

■ District courts are granted broad discretion to amend prior decisions. *See, e.g., O'Neal v. Kennamer,* 958 F.2d 1044, 1047 (11th Cir.1992); *American Home Assurance Co. v. Glenn Estess & Associates, Inc.,* 763 F.2d 1237, 1239 n. 2 (11th Cir.1985). This Court will not alter a prior decision absent a showing of "clear and obvious error" where the "interests of justice" demand correction. *Prudential Securities, Inc. v. Emerson,* 919 F.Supp. 415, 417 (M.D.Fla.1996); *American Home,* 763 F.2d at 1239. Motions for rehearing "should not be used 'to raise arguments which could, and should, have been made'" earlier. *Lussier v. Dugger,* 904 F.2d 661, 667 (11th Cir.1990) (quoting *FDIC v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986)). Indeed, a "district court's denial of reconsideration is especially soundly exercised when the party has failed to articulate any reason for the failure to raise an issue at an earlier stage in the litigation." *Lussier,* 904 F.2d at 667.

The Court's reluctance to hear new arguments is based on the very real notion that district courts, especially those in the Middle District of Florida, are too busy to have parties present arguments one by one. *Prudential,* 919 F.Supp. at 417. Indeed, parties are only afforded one bite at the apple. *American Home,* 763 F.2d at 1239.

■ Accordingly, a party may raise new arguments post-trial only under special circumstances. For example, if a district court enters an order within six months after the passage of legislation, then the rehearing movant may argue that the order clearly contradicts the new law. *Lussier,* 904 F.2d at 667–68 (the "new law" exception); *accord Prudential,* 919 F.Supp. at 418 (finding that the "new law" exception did not apply to a recent District of Massachusetts case which contradicted an Eleventh Circuit case).

## II. Sections 32 and 34(a) of the Lanham Act (15 U.S.C. §§ 1114, 1116(a) (1994))

■ Under Section 43(a) of the Lanham Act, a plaintiff must prove (1) that the defendant used a term in commerce (2) in connection with his or her services (3) which is likely to be confused with the service marks (4) in which the plaintiff possesses the right to use to designate its services. 15 U.S.C. § 1125(a) (1994); *Investacorp, Inc. v. Arabian Investment Banking Corp.,* 931 F.2d 1519, 1521–22 (11th Cir.), *cert. denied,* 502 U.S. 1005, 112 S.Ct. 639, 116 L.Ed.2d 657 (1991). Applying that Section, this Court concluded that CNAF failed to prove elements two (2) and four (4). *CNA Financial Corp. v. Brown,* 922 F.Supp. 567, 572–74 (M.D.Fla.1996).

■ Section 32 of the Lanham Act provides, in pertinent part, that "[a]ny person who shall, without the consent of the registrant, ... use in commerce any reproduction ... of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any ... services on or in connection with which such use is likely to cause confusion ... shall be liable in a civil action by the registrant for the remedies hereinafter provided," including injunctive relief under Section 34(a). 15 U.S.C. § 1114 (1994). Accordingly, Section 34(a) grants district courts the "power to grant injunction, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right the registrant ..., or to prevent a violation under Section 43(a) [15 U.S.C. § 1125(a) ]." 15 U.S.C. § 1116(a).

As Brown correctly points out, CNAF summarily cited Sections 32 and 34(a) of the Lanham Act in its Complaint and Closing Argument (Docket Nos. 1, 93). In fact, CNAF never argued for, or advanced any authority supporting, its notion that Section 32 is materially different from Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)). At a minimum, both Sections require a proper plaintiff, "commercial use," "services," and "likelihood of confusion." As noted above, this Court found two (2) of these four (4) elements lacking from CNAF's *prima facie* case of service mark infringement. Without

any persuasion or authority to the contrary, the Court stands by its prior denial of CNAF's claim for service mark infringement, whether it was based on Section 43(a) and/or 32.

 As for Section 34(a), the Court reads that provision to be merely remedial in nature. Indeed, CNAF fails to advance any authority to the contrary. However, even if that Section were to grant CNAF some new equitable cause of action, CNAF concedes that it grants this Court "broad powers" to follow the "dictates of fairness." (Docket No. 98). In its Memorandum Opinion, the Court stated that "it cannot, in equity, grant an injunction against parties that have not performed any services." *CNA,* 922 F.Supp. at 576. Thus, the Court duly considered its equitable powers and the interests of fairness when it denied CNAF's claims for injunctive relief.

It is also important to point out the fact that the Court generally rejected "[a]ny other claims or defenses" not specifically ruled on within its Memorandum Opinion "as being without merit." *CNA,* 922 F.Supp. at 576. In light of CNAF's completely unpersuasive arguments (pre- and post-trial), the Court's opinion of CNAF's alleged Section 32 and 34(a) claims has not changed. They were, and continue to be, without merit.

### III. Services

 Based on the testimony and evidence at trial, this Court found that neither Brown nor his company conducts any services. *CNA,* 922 F.Supp. at 572, ¶ 20. Thus, it concluded that Brown did not use CNAF's service marks in connection with services, as required by Section 43(a) of the Lanham Act. *Id.* at 573, ¶ 4.

In its instant motion for reconsideration, CNAF argues that Brown did engage in "services." Specifically, CNAF contends that "Brown used the marks in connection with … services when he offered to sell and/or license use of the name to CNAF, when he held discussions with other third parties regarding the sale and/or license of the names, when he demanded that CNAF cease all further use of the name …, and when he was served with lawsuits intended for Plaintiff.…" (Docket No. 98).

First, many of CNAF's factual assertions are not supported by the Court's Findings of Fact. Contrary to CNAF's view, Brown never discussed or made any specific offers to sell the use of CNA–like terms. *CNA,* 922 F.Supp. at 572, ¶ 23. Rather, this Court found that Brown was merely "aware of third parties" willing to pay for the right to use "CNA" terms. *Id.* Furthermore, CNAF's evidence at trial regarding Brown offering to sell the use of the mark to CNAF was not convincing. Although CNAF's witness, its vice president, summarily testified to the contrary, the Court, as the trier of fact, believed that his testimony lacked probative value, since he failed to assert the basis of any personal knowledge to the offer. (Vol. 1, pp. 48–49; Vol. 3, pp. 87–89, Trial Transcript). Accordingly, in its Finding of Fact, the Court found that Brown only requested, through his attorney, that CNAF immediately cease all use of "CNA." *Id.* at 5–6, ¶ 22.

Even if CNAF's factual assertions were supported by a preponderance of the evidence, the Court stands by its prior holding that they do not constitute "services." CNAF advances no authority, persuasive or otherwise, for its bare assertion that Brown's offering to sell the use of the "CNA" mark is a service. On the contrary, a plain reading of the statute clearly supports the Court's construction of "services" as being something repeatedly offered or sold in the ordinary course of business. *See* 15 U.S.C. § 1125(a) (prohibiting a defendant from non-consensual commercial use of mark "in connection with any goods or services, or any container for goods"), § 1114 (prohibiting the same "in connection with the sale, offering for sale, distribution, or advertising of any goods or services").

Furthermore, CNAF could not plausibly convince the Court that Brown's mere demands to CNAF and receipt of CNAF-intended lawsuits are "services." Interestingly enough, CNAF advances no authority for this proposition either.

### IV. Control

 As the parties concede, a mere parent holding company like CNAF must control not only the use of the marks by its licen-

sees-subsidiaries, but also the "nature and quality of the ... services" associated with the marks. *Stanfield v. Osborne Industries, Inc.,* 52 F.3d 867, 871 (10th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 314, 133 L.Ed.2d 217 (1995). Thus, a factual finding of "control" over the nature and quality of insurance services is necessary for CNAF to possess the right to use the service marks, which is one (1) of the elements of service mark infringement.

In their written Closing Arguments, the parties debated whether or not the facts and circumstances presented at trial supported a finding that CNAF "controlled" the nature and quality of its subsidiaries' insurance services. (Docket Nos. 93–95). In its Closing Argument, CNAF merely contended that the Court should find sufficient "control" by it because its vice-president "testified on behalf of [CNAF] that [CNAF] controls the use of the service marks by all its subsidiary companies."

Accordingly, in its Memorandum Opinion, this Court found that "[a]lthough CNAF controls the use of its service marks, it does not control the nature and quality of the insurance services that the CNAF family offers in connection with the service marks." *CNA,* 922 F.Supp. at 571, ¶ 14.

Now, post-trial, CNAF contends that the Court erred in this factual finding. First, CNAF argues that this Court should supplement its "simple" and "conclusory" findings in paragraph fourteen (14) with specific, factual support. However, as Brown correctly points out, this Court "need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts." Fed.R.Civ.P. 52 advisory committee's notes. Thus, the Court more than adequately complied with Rule 52 because it decided an issue of fact, control, and applied it to the law, the Lanham Act.

■ Next, CNAF asserts that there was insufficient evidence at trial to support the Court's finding of "no control" in paragraph fourteen (14). The Court, which sat as the sole trier of fact, strongly disagrees. The evidence upon which the Court relied included, but is not limited to, the following testimony by CNAF's vice-president:

1. CNAF does not sell insurance in any state or territory of the United States. (Vol. I, p. 86, Trial transcript).

2. CNAF does not underwrite any insurance. (Vol. I, p. 87, Trial transcript).

3. CNAF is not engaged in any form of insurance activity other than being a holding company. (Vol. I, p. 103, Trial transcript).

4. Q: "[W]hat kind of control does CNA Financial Corporation have over the product with the mark on it?" A: "CNA Financial Corporation is a holding company in regard to products. Control for products is at each of the companies." (Vol. I, p. 115, Trial transcript).

5. Q: "CNA Financial Corporation has absolutely, unequivocally, no control over insurance products; yes or no?" A: "As the question was posed, I would say, that's correct." (Vol. I, p. 116, Trial transcript).

Clearly, this evidence is more than sufficient to support the Court's finding of "no control." Although the same witness testified on direct examination that "CNA Financial Corporation owns and controls the use of all service marks with respect to the nature of the services which the marks are used," (Vol. I, p. 22, Trial transcript), and also responded affirmatively to a leading question, (Vol. I, p. 26, Trial transcript), the Court resolved this conflict in the evidence by finding the witness' answers on cross-examination more credible than his seemingly rehearsed answers on direct examination.

Thirdly, CNAF argues that the Court erred because "[t]he law is so clear" that insurance holding companies like CNAF may and do exercise control over their subsidiaries' insurance services. CNAF's Reply to Brown's Response to Motion to Amend Judgment, Etc., at 7 (Docket No. 107). As support, CNAF exhaustively cites and analyzes statutes and case law, the vast majority of which CNAF raises for the first time post-trial without advancing any reason why this Court should consider its new arguments. In light of the fact that Counsel for CNAF had nearly a year and a half to prepare its case for trial, these arguments "could, and should, have been made" earlier. *Lussier v. Dugger,* 904 F.2d 661, 667 (11th Cir.1990).

Even if the Court considers CNAF's new arguments, CNAF has failed to establish any "clear and obvious error" by the Court. At most, CNAF's cited case law establishes that courts should consider the relationship between the mark licensor and licensee as circumstantial evidence of "control." In the instant case, the Court considered the fact that CNAF owns 100% of Continental Casualty Company, which in turn owns 100% of all the CNA subsidiaries. *See CNA*, 922 F.Supp. at 570, ¶ 2. Whatever inference of "control," minimal or otherwise, may be derived from CNAF's once-removed ownership of all but one of its licensees is clearly and persuasively outweighed by the trial evidence of "no control."

The same bare, circumstantial inference of "control" can be derived from Fla. Stat. § 628.801–.803 (1995), and its corresponding regulations, which CNAF conveniently advances for the first time post-trial in its reply memorandum. Those authorities, which police CNAF's relationship with its subsidiaries in only one (1) of the fifty (50) states in which it conducts business, merely permit CNAF to act as a holding company over, and "control," its subsidiary-insurers. *E.g.*, Fla.Admin.Code Ann. r. 4–143.046 (requiring insurers in Florida to register with the appropriate state agency by filing an "Insurance Company Holding System Registration Statement,"[1] which must list "any person controlling the insurer"), r. 4–143.045(3) (defining "control" as the "power to direct or cause the direction of the management and policies of a person," which is presumed "if any person, directly or indirectly, owns . . . ten [10] percent or more of the voting securities of any other person") (1995).

However, because Florida's definition of "control" is not the same as "control" under the Lanham Act, which must be over the nature and quality of the licensee's services,[2] it adds nothing to the Court's finding of "no control" other than a minimally probative inference of "control." Again, this inference was greatly outweighed by the evidence at trial. Indeed, CNAF never cited this Florida authority pre-trial, at trial, in closing argument, or in its memorandum in support of

its motion for reconsideration. If it had any great bearing on this case, Counsel for CNAF certainly would have raised the issue earlier than in CNAF's reply to Brown's response to the instant motion.

Within this barrage of authority that it failed to raise pre-trial, CNAF concedes that "control" is a factual question that should be treated "on a case by case basis." CNAF's Motion to Amend Judgment, Etc., at 14 (Docket No. 98). Thus, the Court's factual finding of "no control" easily reconciles with all the authority cited by CNAF, in that this finding was "adequately supported by the record," regardless of which party bore the burden of proof. *Moore Business Forms, Inc. v. Ryu*, 960 F.2d 486, 489 (5th Cir.1992) (affirming a district court's finding of "no control" because it was "adequately supported by the record" and, therefore, the defendant satisfied his "stringent standard of proof").

### V. Statutory Unfair Competition

In its Memorandum Opinion, this Court denied CNAF's statutory unfair competition claim because (1) CNAF failed to persuade the Court how Brown unfairly competed, and (2) Brown did not engage in any "services" and, therefore, was not competing with CNAF. *CNA*, 922 F.Supp. at 575. Regarding the first reason, this Court stands by its prior interpretation of *Freedom Savings & Loan Association v. Way*, 757 F.2d 1176, 1186 (11th Cir.), *cert. denied*, 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985). CNAF's bare assertion that it does not have to explain to the Court how Brown unfairly competed does not begin to convince the Court that it "clearly erred." Certainly, CNAF can not contest its having the burden of persuasion with respect to its claim for statutory unfair competition.

Furthermore, contrary to CNAF's unsupported view, the Court correctly interpreted *American United Life Insurance Co. v. American United Insurance Co.*, 731 F.Supp. 480, 485 (S.D.Fla.1990), as requiring CNAF to prove that Brown engaged in "ser-

---

1. At trial, CNAF never attempted to admit into evidence any of its subsidiaries' "Insurance Company Holding System Registration Statements."

2. 15 U.S.C. § 1127 (1994).

vices." The Court stands by its finding of "no services" for the same reasons discussed *supra.*

### VI. Trade Name Infringement and Common Law Unfair Competition

The Court rejects CNAF's cursory arguments that the Court erred in denying CNAF's claims for trade name infringement and common law unfair competition. The Court stands by its prior holdings in the absence of any new authorities to the contrary. *CNA,* 922 F.Supp. at 574–75.

### VII. Additional Testimony or New Trial

Having rejected all of CNAF's grounds for reconsideration, the Court also denies CNAF's alternative requests for the Court to (1) admit additional testimony, or (2) grant a new trial. In a non-jury case, the standard for admitting additional testimony or granting a new trial is the same as the standard for reconsideration. Fed.R.Civ.P. 59(a). Therefore, because CNAF has failed to establish any "clear and obvious error" by the Court, it denies CNAF's cursory requests for additional testimony and a new trial for the same reasons that it denies its motion for reconsideration.

## BROWN'S MOTION FOR RULE 11 SANCTIONS

 In the second motion before the Court, Brown asks this Court to sanction Douglas S. Gregory, Counsel for CNAF, pursuant to Fed.R.Civ.P. 11 (Docket No. 101). As grounds, Brown contends that, in CNAF's Motion for Reconsideration, Gregory intentionally mislead the Court with an argument that lacked evidentiary support. To support his argument that Brown engages in "services," Gregory stated the following:

> Brown continues to pursue this business [of attempting to make money by misappropriating and misusing service marks]. Immediately following the entry of this Court's Judgment and Memorandum Opinion, Brown, by and through his legal counsel, David Masselli, offered to sell the use of the service marks to CNAF in exchange for $2.5 million. In addition, Brown agreed that upon payment of $2.5 million, he would take steps to ensure that the Court's Judgment and Memorandum Opin-

ion did not become final and was stricken from the public record. Mr. Brown is using the mark in connection with services of his particular business services, although such services are not legitimate endeavors.

CNAF's Motion to Amend Judgment, Etc., at 5–6 (Docket No. 98). Brown argues that this statement is unsupported by the record, and also intentionally misleads and misstates the terms of his post-trial settlement offer, which he has disclosed to the Court.

Under Fed.R.Civ.P. 11, among other requirements, an attorney's factual assertions must "have evidentiary support or, if specifically so identified, ... [be] likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Clearly, all of Gregory's assertions lack "evidentiary support" in that the events depicted in his assertions refer to Brown's letter, which was written *after* the close of all the evidence. The issue, then, is whether Gregory's assertions were "likely to have evidentiary support" if the Court were to grant CNAF's request for additional evidence or a new trial.

The Court finds that these assertions would not likely be supported by evidence. First, given the strict standard for additional evidence or a new trial, CNAF was unlikely to be afforded an opportunity to prove these new alleged facts. Even if he overcame this hurdle, Gregory failed to specifically identify that these facts would likely be supported, as required by Rule 11. Next, Brown's letter appears to be an offer of settlement, which is likely to inadmissible under Fed.R.Evid. 408. Finally, in light of this Court's conclusion that "services" do not include offering to sell the right to use a service mark, the factual assertions in Brown's letter would also seem to be irrelevant and, thus, inadmissible under Fed.R.Evid. 402.

Because the Court finds that his factual assertions lacked evidentiary support and, thus, violated Rule 11, it hereby **sanctions** Attorney Douglas S. Gregory, Counsel for CNAF, in the form of this public reprimand. The Court chooses not to impose any further sanctions on Gregory, however, in light of Mr. Brown's often disruptive conduct at trial.

(*E.g.,* Vol. III, pp. 19–23, Trial Transcript). While it is not the Court's intent to minimize Gregory's Rule 11 violation, the incident did not occur in isolation. Unfortunately, the record in this case is full of reciprocal, unprofessional attacks. The Court cautions both parties and their respective counsel to maintain professional decorum when appearing before any court, in person or in writing. Accordingly, it is

**ORDERED** that Plaintiff's Motion to Amend Judgment or, in the Alternative, to Open the Judgment and Take Additional Testimony, or, in the Alternative, for a New Trial (Docket No. 98) be **DENIED;** Defendant's Motion for Leave of Court to File a Supplemental Memorandum (Docket No. 108) be **DENIED;** Defendant's Motion to Impose Rule 11 Sanction on Attorney Douglas S. Gregory (Docket No. 101) be **GRANTED;** and Attorney Douglas S. Gregory of Gregory & Spurgin, P.A., 442 West Kennedy Blvd., Suite 340, Tampa, Florida, 33606, is hereby **SANCTIONED** as provided herein.

**DONE AND ORDERED.**