PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
12/22/98
THOMAS  K. KAHN
CLERK

No. 96-3119

D. C. Docket No. 94-1058-CIV-T-17A

CNA FINANCIAL CORPORATION,

Plaintiff-Appellant-Cross-Appellee,

versus

LARRY D. BROWN, and CNA INSURANCE
COMPANIES, INC.,

Defendants-Appellees-Cross-Appellants.

Appeals from the United States District Court
for the Middle District of Florida

(December 22, 1998)

Before HATCHETT, Chief Judge, TJOFLAT and COX, Circuit Judges.

TJOFLAT, Circuit Judge:

Appellant CNA Financial Corporation (CNAF) is the parent holding corporation of Continental Casualty Company (Continental), which in turn owns a variety of insurance companies throughout the United States. These companies – which include the National Fire Insurance Company of Hartford, the Transcontinental Insurance Company, and the Valley Forge Life Insurance Company – are collectively known in advertising as the "CNA Insurance Companies."

Continental registered the service mark "CNA" in 1966 with the United States Patent and Trademark Office for use in underwriting a variety of forms of insurance. The mark was assigned in 1973 to CNAF; three years later CNAF registered the additional service mark "Insurance From CNA."

Appellee Larry Brown, in the early 1990s, did some research and discovered that there was no entity called "CNA Insurance Company" or "CNA Insurance Companies" registered with any state insurance department in the country. After conducting this research, Brown, in February 1994, incorporated "CNA Insurance Companies" (CIC) in Delaware and registered "CNA Insurance Company" as the corporation's trade name. Two weeks after the incorporation, Brown's attorney sent a letter to Continental, stating that Brown owned the name "CNA Insurance Company" and that Continental must cease using the term. In response, CNAF filed suit in the United States District Court for the Middle District of Florida seeking to enjoin Brown and CIC from using the term "CNA." The suit was based on section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1994), and on a common law claim of unfair competition.

2

The case was referred to court-annexed arbitration pursuant to 28 U.S.C. § 651(a) and the corresponding local rule.[1] CIC, having lost the arbitration, filed a demand for trial de novo, and the case was reinstated to the district court's trial docket. After a bench trial, the district court denied injunctive relief. The district court found that Brown and CIC had not used the term "CNA" in connection with their services, which is a necessary element of a Lanham Act or unfair competition claim. See 15 U.S.C. § 1125(a)(1) (1994); CNA Fin. Corp. v. Brown, 922 F.Supp. 567, 573, 575 (M.D. Fla. 1996). Specifically, as of the time of trial, CIC had not offered any services – CIC's entire corporate history consisted of incorporating, registering a trade name, and writing a letter to the Continental Insurance Company. In addition, the district court found that CNAF had allowed its insurance subsidiaries the uncontrolled use of the CNA service mark, thereby abandoning its right to use the service mark. See id. at 574. CNAF appeals.

I.

CNAF's initial challenge to the district court's decision is that CIC's demand following the arbitration for a trial de novo was untimely; therefore the district court abused its discretion in denying CNAF's motion for final judgment. Federal law states that an arbitration award in a court-annexed arbitration becomes the judgment of the court if a trial de novo is not requested within 30 days of the filing of the award. See 28 U.S.C. §§ 654(a), 655(a) (1994). In this case, the arbitration award was filed on July 27, 1995, and CIC made a demand for trial de novo on August 30, 1995 – a space of 34 days. CNAF subsequently filed a motion for final judgment;

---

[1] Section 651(a) authorizes certain United States district courts, including the Middle District of Florida, see 28 U.S.C. § 658 (1994), to adopt local rules allowing the court to refer any civil action to arbitration.

3

the district court held that CNAF was not prejudiced by the procedural errors and that "the ends of justice" therefore required denial of the motion.

The initial question with which we are faced is whether the district court had the power to hear the case after the expiration of the 30-day period. Time limits on causes of action in federal statutes are presumed to be subject to extension on equitable grounds – in other words, if "the ends of justice" so require – unless Congress specifically states otherwise. See Ellis v. General Motors Acceptance Corp., __ F.3d __ (11th Cir. 1998) [slip op. 97-6963, Nov. 13, 1998]. Looking at 28 U.S.C. § 654, there is no reason to that Congress intended strict application of the 30-day time limit, especially in light of the experimental nature of court-annexed arbitration. See 28 U.S.C.A. § 651 practice commentary (West 1993) ("Far from requiring conformity, freeing each participating district to adopt its own rules will prompt their adoption of different requirements and add value to the experimental nature of the project."). Furthermore, we have previously treated the district court's decision whether to hear a case after the expiration of the 30-day period in 28 U.S.C. § 654 as a matter of discretion. See Cheney v. Anchor Glass Container Corp., 71 F.3d 848, 850 (11th Cir. 1996). We therefore conclude that the district court was not divested of jurisdiction after the expiration of the 30-day period.

Having determined that the district court had the power to hear the case, we must now determine whether the district court's decision to hear the case constituted an abuse of discretion. The factors to be considered in this inquiry are the danger of prejudice, the length of the delay in demanding a new trial, the reason for the delay (including whether it was within the reasonable

control of the movant), and whether the delaying parties acted in good faith.  See id. at 850.[2]  In this case, there was clearly no prejudice to CNAF, a delay of only two days, and no evidence that Brown or CIC acted in bad faith.  The district court made no findings regarding the reason for the delay, but the record suggests that the delay may have resulted from the clerk of court's erroneous record notation that any demand for trial de novo was not due until September 5, 1995.  We therefore conclude that the district court did not abuse its discretion in excusing CIC's two-day delay and thus denying CNAF's motion for final judgment.[3]

II.

We also conclude that the district court did not abuse its discretion in denying CNAF an injunction.  The grant of equitable relief, such as an injunction, is a matter of judicial discretion. See Eccles v. Peoples Bank of Lakewood Village Cal., 333 U.S. 426, 431, 68 S.Ct. 641, 644, 92 L.Ed. 784 (1948); Pebble Beach Co. v. Tour 18 I Ltd., 155 F.3d 526, 549 (5th Cir. 1998).  Where

---

[2] Cheney involved a district court that had entered a final judgment on the basis of a party's failure to demand a trial de novo within 30 days of the filing of an arbitration award; the district court then denied the delaying party's motion to set aside the judgment under Federal Rule of Civil Procedure 60(b).  See Cheney, 71 F.3d at 849.  This case, in contrast, is an appeal from a denial of a motion for final judgment.  Although the procedural posture of the Cheney case and this one are therefore different, the scope of the district court's discretion regarding the effect of a delay in filing a demand for a trial de novo should be the same regardless of whether the delay was excused or unexcused.  We therefore apply the Cheney standard to this case.

[3] CNAF also points out that Brown never filed a demand for a trial de novo, and therefore the arbitration should at least be binding as to him.  The statute, however, states that "[u]pon a demand for a trial de novo, the action shall be restored to the docket of the court and treated for all purposes as if it had not been referred to arbitration."  28 U.S.C. § 655(b) (1994) (emphasis added).  This language implies that all parties to the arbitration are treated as if the arbitration never occurred; thus, once CIC filed a demand for a trial de novo, Brown was relieved of the obligation to file such a demand.

5

the need for equitable relief is remote or speculative, it is well within the discretion of the court to determine that such relief is inappropriate. See Eccles, 333 U.S. at 431, 68 S.Ct. at 644; 11A Charles Alan Wright et al., Federal Practice and Procedure § 2942, at 45-47 (2d ed. 1995). In this case, it is uncertain whether Brown or CIC will ever use the CNA name to sell insurance products or related services. Should they do so, equitable relief for CNAF may well be required. At this stage, however, we find no abuse of discretion in the district court's holding that "it cannot, in equity, grant an injunction against parties that have not performed any services." Brown, 922 F. Supp. at 576. We therefore affirm the district court's denial of equitable relief, without expressing any views as to the merits of CNAF's Lanham Act and unfair competition claims.[4]

## III.

Finally, CNAF challenges the district court's assessment of Rule 11 sanctions against it. Rule 11 requires, inter alia, that an attorney's factual allegations "have evidentiary support or . . . are likely to have evidentiary support after a reasonable opportunity for further investigation or

---

[4] In addition to CNAF's claims, Brown made a request (in essence, a counter-claim) in his opening statement at trial for cancellation of CNAF's service marks pursuant to 15 U.S.C. § 1119. The district court rejected this request, apparently on the ground that the issue was not appropriately presented to the court. See Brown, 922 F. Supp. at 576 (describing Brown's request as "cursory"). We treat the district court's decision as a denial of leave to amend the pleadings, a decision which we review for an abuse of discretion. See Rosen v. TRW, Inc., 979 F.2d 191, 194 (11th Cir. 1992). In light of the untimely nature of Brown's request, and the possible prejudice to CNAF of introducing a counter-claim for the first time at trial, we find no such abuse here.

6

discovery." Fed. R. Civ. P. 11(b)(3). CNAF, in a post-trial motion for reconsideration,[5] stated that Brown offered (as part of a settlement offer) to sell the use of "CNA Insurance Company" and "CNA Insurance Companies" to CNAF for the modest sum of $2.5 million. CNAF argued that such an offer constituted the provision of services under the CNA name, and therefore the district court should reconsider its finding that Brown and CIC had not offered any services. The district court reasoned that CNAF's allegations could not have "evidentiary support," because they related to events occurring after the close of the evidence. Therefore, the allegations were proper only if they were "likely to have evidentiary support" if CNAF were allowed to reopen its case. The district court noted that settlement offers are generally inadmissible under Federal Rule of Evidence 408, and that, in light of its conclusion that "services" (as used in the Lanham Act) does not include offering to sell the use of a service mark, the allegations would also be irrelevant and thus inadmissible under Federal Rule of Evidence 402. See CNA Fin. Corp. v. Brown, 930 F. Supp. 1502, 1509 (M.D. Fla. 1996). The district court therefore concluded that the allegations were not likely to have evidentiary support, and imposed Rule 11 sanctions.[6]

We review a district court's Rule 11 determinations for an abuse of discretion. See Souran v. Travelers Ins. Co., 982 F.2d 1497, 1506 (11th Cir. 1993). We hold that the district court abused its discretion in this case. Rule 408 of the Federal Rules of Evidence forbids the introduction of settlement offers to prove or disprove liability; however, it explicitly permits the

---

[5] The motion was "to amend judgment or, in the alternative, to open the judgment and take additional testimony, or, in the alternative, for a new trial." See Fed. R. Civ. P. 52(b), 59.

[6] The sanctions did not involve a monetary penalty, only a "public reprimand." Brown, 930 F. Supp. at 1509.

introduction of such offers for other purposes. See Fed. R. Evid. 408.[7] In this case, the settlement offer would have been introduced to prove that Brown and CIC were engaging in the provision of services, not as an admission of liability. As for the district court's conclusion that such evidence was irrelevant under Rule 402, such a conclusion was not clear from the district court's findings of fact and conclusions of law. In fact, the findings of fact and conclusions of law expressly stated that "Brown has not made any specific offers to sell the use of the terms 'CNA,' 'CNA Insurance Company,' or 'CNA Insurance Companies' to any third parties," suggesting that evidence to the contrary might influence the district court's decision. Brown, 922 F. Supp. at 572. In addition, the findings of fact and conclusions of law did not say that the term "services" as used in the Lanham Act does not include the sale of a service mark. CNAF consequently had no reason to think that evidence of Brown's offer to sell the "CNA" names would be inadmissible, and Rule 11 sanctions were therefore inappropriate.

IV.

For the foregoing reasons, the district court's grant of Brown's motion for Rule 11 sanctions is REVERSED. In all other respects, the judgment of the district court is AFFIRMED.

SO ORDERED.

---

[7] Rule 408 states, in relevant part, "Evidence of [a settlement offer] is not admissible to prove liability for or invalidity of the claim or its amount. . . . This rule . . . does not require exclusion when the evidence is offered for another purpose . . . ." Fed. R. Evid. 408.

8